INTERNATIONAL BUSINESS MACHINES CORPORATION ET AL., APPELLANTS, *v.*
LEVIN, TAX COMMR., APPELLEE.
[Cite as *Internatl. Business Machines Corp. v. Levin*,
125 Ohio St.3d 347, 2010-Ohio-1861.]

*Taxation — Sales and use tax — R.C. 5739.071 — R.C. 5741.10 — Electronic information services.*

(No. 2009-1296 — Submitted February 17, 2010 — Decided May 5, 2010.)

APPEAL from the Board of Tax Appeals, Nos. 2007-Z-1140,
2007-Z-1141, and 2007-Z-1143.

_____

**CUPP, J.**

**{¶ 1}** Appellants, International Business Machines Corporation ("IBM Corp.") and IBM Credit Corporation ("IBM Credit") (collectively, "IBM"), appeal from a decision of the Board of Tax Appeals ("BTA") that affirmed three final determinations of the Tax Commissioner, each of which declined to award interest on certain refunds. We hold that the commissioner and the BTA properly denied the interest claims.

### Facts

**{¶ 2}** The factual record in this case is sparse, and there are no evidentiary disputes. Citing R.C. 5739.071 and 5741.10 as the statutory bases, the Tax Commissioner issued separate final determinations granting *use*-tax refunds to IBM Corp. and IBM Credit. The refunds to IBM Corp. amounted to $1,137,811.31 in the aggregate, and the refunds to IBM Credit amounted to

$2,825,920.79.[1]   Additionally, citing only R.C. 5739.071, the commissioner granted IBM Corp. a *sales*-tax refund of $321,005.26.

**{¶ 3}**   With each refund, IBM requested an award of interest; in each instance, the commissioner denied that request.  IBM appealed each case to the BTA on the sole issue of the denial of interest.  The parties waived an evidentiary hearing and submitted briefs on the legal arguments.

**{¶ 4}**   On June 23, 2009, the BTA issued a single decision covering all of the refund claims.  The BTA rejected IBM's claim that the reference in R.C. 5739.071(A) to the general refund provisions, R.C. 5739.07 (sales tax) and 5741.10 (use tax), incorporated the statutory right to interest under those provisions.  See R.C. 5739.132(B).  IBM appealed. We affirm the decision of the BTA.

## Analysis

**{¶ 5}**   In 1983, Ohio first imposed sales and use taxes on the provision of "automatic data processing and computer services" ("ADPCS").  Am.Sub.H.B. No. 291, 140 Ohio Laws, Part II, 2872, 3215, 3220.  In 1993, the General Assembly amended the taxation of ADPCS in two principal ways. Am.Sub.H.B.

---

1. Particularly unclear is the status of IBM Credit with respect to the transactions for which it received refunds.  The BTA recited that "IBM Credit Corporation [ ] *collected* sales and use taxes for tax years 1997 through 2006." (Emphasis added.)  *Internatl. Business Machines Corp. v. Levin* (June 23, 2009), BTA Nos. 2007-Z-1140, 2007-Z-1141, and 2007-Z-1143, at 2.  In its brief, IBM further explains that "IBM Credit Corporation *collected Ohio use taxes* during the years 1997 through 2006 *for computers and related items sold or leased to International Business Machines Corporation*." (Emphasis added.) This makes it appear that IBM Credit acted as a use-tax seller (the use-tax equivalent of a sales-tax vendor) with respect to the transactions, rather than as a "consumer" who purchased and used the items as a "provider of electronic information services" pursuant to R.C. 5739.071(A).  We have stated that one of the statutory prerequisites a claimant must show to obtain a 25 percent refund is that the claimant "is a provider of electronic information services." *Key Servs. Corp. v. Zaino* (2002), 95 Ohio St.3d 11, 16, 764 N.E.2d 1015. We must presume, however, that the commissioner properly evaluated the refund claims when he authorized the grant of refunds.  See *Wheeling Steel Corp. v. Evatt* (1944), 143 Ohio St. 71, 28 O.O. 21, 54 N.E.2d 132, paragraph seven of the syllabus ("The action of an administrative officer or board within the limits of the jurisdiction conferred by law is presumed, in the absence of proof to the contrary, to be valid and to have been done in good faith and in the exercise of sound judgment").

No. 152, 145 Ohio Laws Part II, 3341, and Part III, 4287, 4294, 4305-4306. First, the broader category ADPCS was broken down into three categories of taxable services: automatic data processing services ("ADP"), electronic information services ("EIS"), and computer services. R.C. 5739.01(B)(3)(e) and 5739.01(Y). Second, the legislature enacted a partial tax refund provision only for "providers of EIS." R.C. 5739.071. This case concerns that tax benefit.

{¶ 6} R.C. 5739.071(A) states that the Tax Commissioner "shall refund to a provider of electronic information services twenty-five per cent" of the sales tax or use tax it pays on its purchases of computers, related equipment, and software. The equipment and software must be "primarily used to acquire, process, or store information for use by business customers or to transmit or disseminate such information to such customers." The tax benefit is also available when the provider pays taxes on the purchase of "the services of installing or repairing such property, and agreements to repair or maintain such property." As for the refund procedure, R.C. 5739.071(A) provides: "Applications for a refund shall be made in the same manner and subject to the same time limitations as provided in sections 5739.07 and 5741.10 of the Revised Code." R.C. 5739.07 is the general refund provision in the sales-tax law; R.C. 5741.10 is the general refund provision in the use-tax law. Both provisions premise refunds on illegal or erroneous payments made by the taxpayer.

{¶ 7} With respect to interest on refunds, division (F) of R.C. 5739.07, applicable to sales tax, explicitly states that "[w]hen a refund is granted under this section, it shall include interest thereon as provided by section 5739.132 of the Revised Code." R.C. 5741.10, applicable to use tax, relies on a comprehensive incorporation of sales-tax refund provisions into the use tax: refunds of use-tax amounts "paid * * * by a seller or consumer illegally or erroneously shall be made in the same manner as refunds are made to a vendor or consumer under section 5739.07 of the Revised Code." Finally, for tax payments due on or after

January 1, 1998, R.C. 5739.132(B) expressly requires interest to be "allowed and paid on any refund granted pursuant to section 5739.07 or 5741.10 of the Revised Code from the date of overpayment."

{¶ 8} Against this statutory backdrop, IBM argues that the 25 percent refunds the commissioner allowed under R.C. 5739.071(A) should bear interest. We cannot agree, and we must affirm the denial of interest.

*R.C. 5739.071(A) does not incorporate the entitlement to interest because the incorporation language is limited, and because R.C. 5739.132(B) does not call for interest when refunds are allowed under R.C. 5739.071(A)*

{¶ 9} IBM first argues that the second sentence of R.C. 5739.071(A), by referring to the general refund provisions, incorporates the right to interest that is allowed on refunds that are granted under those provisions. In opposition, the commissioner points out that the plain terms of the language of incorporation are limited and do not – certainly do not *expressly* – encompass a right to interest.

{¶ 10} As noted, R.C. 5739.071(A) states that "[a]pplications for a refund shall be made in the same manner and subject to the same time limitations as provided in sections 5739.07 and 5741.10 of the Revised Code." We agree with the Tax Commissioner that the express terms of this incorporation are limited to two aspects of a refund claim: the manner and the timing of making an application for the refund. Indeed, the language of R.C. 5739.071 is strikingly more restrictive than that of R.C. 5741.10, which broadly calls for refunds of use tax to "be made in the same manner" as sales tax refunds. Instead of referring to the making of the *refunds themselves*, R.C. 5739.071 refers narrowly to the making of the *application for a refund*.

{¶ 11} Moreover, the interest provision in R.C. 5739.132(B) by its express terms does not apply to refunds granted under R.C. 5739.071(A). The interest provision states that interest shall be "allowed and paid on any refund granted pursuant to section 5739.07 or 5741.10 of the Revised Code." But the 25

4

percent refunds at issue are not granted under those general refund provisions. Rather, they are authorized under R.C. 5739.071(A) itself, which states that the "tax commissioner shall refund to a provider of electronic information services twenty-five per cent of the tax it pays" on the purchase of qualifying equipment and software. In plain language, R.C. 5739.071(A) "grants" the 25 percent refunds. The consequence is that such refunds do not qualify as refunds authorized, or "granted," pursuant to the general refund provisions, R.C. 5739.07 and R.C. 5741.10. Because R.C. 5739.132(B) by its terms allows interest only on refunds granted under the general provisions, no interest may be allowed on the 25 percent refunds granted pursuant to R.C. 5739.071(A). See *Gen. Elec. Co. v. DeCourcy* (1979), 60 Ohio St.2d 68, 69, 14 O.O.3d 270, 397 N.E.2d 397, citing *State ex rel. Cleveland Concession Co. v. Peck* (1954), 161 Ohio St.31, 52 O.O. 476, 117 N.E.2d 429 (absent express legislative allowance of interest, taxpayer may not obtain interest on illegally or erroneously collected real estate taxes).

{¶ 12} IBM additionally argues that the portion of R.C. 5739.132(B) that relates to refunds of tax payments due on or after January 1, 1998, specifically does not, in so many words, link the award of interest to the status of the refunded amount being an "illegal or erroneous" payment. It is true that the first sentence of division (B), which relates to refunds of taxes due prior to January 1, 1998, does refer to "payment of an illegal or erroneous assessment." However, IBM misconstrues the legislative purpose for not using the term "illegal or erroneous" in the second sentence of that division. The different language reflects the expansion of circumstances under which interest on refunds is allowed: formerly, interest was awarded on refunds of taxes that had been paid under the compulsion of a mistaken tax assessment, but not on voluntary overpayments. Beginning in mid-1998, interest was allowed on *all* overpayments, including voluntary ones based on the taxpayer's own mistake. Because the allowance of interest was now triggered by *any* refund under the general refund provisions, there was no need to

mention the terms "illegal" and "erroneous" in the body of the statute. But the "illegal or erroneous" requirement was still relevant, because both R.C. 5739.07 and R.C. 5741.10 link refunds to illegal or erroneous payments (be they voluntary or compulsory in character).

{¶ 13} In summary, because R.C. 5739.132(B) only authorizes payment of interest with respect to refunds granted under the general refund provisions, interest is not available on the 25 percent refunds granted under R.C. 5739.071(A).

*Because the amounts refunded under R.C. 5739.071(A) were legally required to be paid at the time they were paid, they do not qualify as "overpayments" or as "illegal or erroneous payments"*

{¶ 14} In an attempt to bring its claim within the ambit of the general refund statutes — and thereby trigger the requirement of R.C. 5739.132(B) to pay interest on the refund — IBM argues in the alternative that the 25 percent sum subject to rebate is really an "illegal or erroneous" payment in the sense that, as counsel stated at oral argument, "it has to be prepaid, but it also has to be refunded." We do not believe that this assertion accurately describes the situation. In fact, conceding that the full amount of the tax — which includes the 25 percent refundable portion — must be "prepaid" under R.C. 5739.071(A) defeats this argument. Because the full sales or use tax is, in law, required to be paid upfront, that is, at the time of the sales transaction, it cannot be a payment that is either "illegal" or "erroneous." It is legally required. Indeed, it would be illegal or erroneous (or both) if IBM did *not* to make the upfront payment to its vendor or seller, who, in turn, is then required to remit the money to the state.

{¶ 15} This reasoning accords with our discussion of R.C. 5739.071(A) in *Key Servs. Corp. v. Zaino* (2002), 95 Ohio St.3d 11, 15, 764 N.E.2d 1015. In that case, we considered an argument advanced by the taxpayer that R.C. 5739.071 constituted a type of refund statute that should be accorded "liberal construction"

in favor of the taxpayer. In rejecting that argument, we stated that a taxpayer seeking the 25 percent refunds under R.C. 5739.071(A) "is not seeking the return of an illegal or erroneous payment." Instead, we found that R.C. 5739.071(A) is "more analogous to a tax exemption than it is to an illegal or erroneous payment." Similarly, the 25 percent refunds granted under R.C. 5739.071(A) cannot be considered as "illegal or erroneous payments" for purposes of the interest statute.

*There is no basis for an in pari materia reading of the statutes in this case because there are no statutory conflicts to harmonize*

{¶ 16} IBM also suggests that R.C. 5739.071(A) should be read in pari materia with the general refund statutes, which provide that interest must be paid. We find this argument unavailing. Because the general refund statutes and R.C. 5739.071(A) address different subject matters, there are no inconsistencies to reconcile.

{¶ 17} As previously discussed, the general refund statutes furnish a remedy when taxes have been paid in excess of what is legally owed. By contrast, R.C. 5739.071(A) constitutes a partial tax exemption, which, procedurally, is statutorily effected through a refund mechanism. Even though the procedural mechanism by which a refund is effected is the same in both statutes, the two statutes still address different underlying subjects: the need to afford a remedy for overpayment of taxes on the one hand and, on the other hand, the public-policy desirability of affording a limited tax reduction for the statutorily specified transactions. Accord *Key Servs. Corp.*, 95 Ohio St.3d at 15, 764 N.E.2d 1015 (R.C. 5739.071 is "analogous to a tax exemption").

{¶ 18} A review of our cases in which statutes have been read in pari materia clarifies the distinction. In *State ex rel. Cordray v. Midway Motor Sales, Inc.*, 122 Ohio St.3d 234, 2009-Ohio-2610, 910 N.E.2d 432, we used the doctrine to reconcile statutes and an administratively prescribed odometer-disclosure affidavit. We held that the violation of the odometer-disclosure statute must be a

"knowing" violation *in order to harmonize all of the provisions* relating to the subject; as we observed, "if we were to read the statutes any other way, the odometer disclosure affidavit would be rendered meaningless." Id. at ¶ 26.

{¶ 19} In *United Tel. Co. of Ohio v. Limbach* (1994), 71 Ohio St.3d 369, 643 N.E.2d 1129, we addressed the Tax Commissioner's claim that by deleting from R.C. 5727.06 the phrase "used in connection with or as incidental to the operation," the General Assembly had made *all* property of a public utility taxable even though R.C. 5709.01 limited personal-property taxation in general to property "located and used in business in this state." We resolved the disputed significance of deleting the language from the public-utility property tax by construing those statutes in pari materia with the general limitation on personal-property taxation: the court declined to construe the deletion of the language as eliminating the used-in-business requirement for public-utility property, given that the general statutes continued to prescribe that requirement for all personal property taxation. Id. at 372.

{¶ 20} Nothing resembling the contradictions at issue in *Midway Motor* and *United Tel.* is at issue in this case. The absence of statutory authorization of interest for one category of refunds does not inherently contradict the authorization of interest for another category of refunds.

## Conclusion

{¶ 21} In light of the above discussion, the Tax Commissioner correctly denied an allowance of interest with respect to refunds granted under R.C. 5739.071(A), and the BTA correctly affirmed that denial. The BTA's decision is, therefore, affirmed.

Decision affirmed.

PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, and LANZINGER, JJ., concur.

BROWN, C.J., not participating.

_____

Baker & Hostetler, L.L.P., Edward J. Bernert, and Kelvin M. Lawrence, for appellants.

Richard Cordray, Attorney General, and Barton A. Hubbard and Sophia Hussain, Assistant Attorneys General, for appellee.

_____